Judge Roland L. Belsome
This appeal is taken from the community property partition judgment rendered on May 30, 2018.
On appeal, Ms. Bourdais' challenges to the trial court's judgment are grouped into three categories: 1) reimbursements related to the marital domicile; 2) reimbursements on student loans; and 3) reimbursements for taxes. For the reasons that follow we reverse in part, amend in part, and affirm in part.
Standard of Review
"[A] trial court has broad discretion in adjudicating issues raised by divorce and partition of the community. The trial judge is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses."[1]
Marital Domicile
Ms. Bourdais maintains that the trial court erred in its award of reimbursements concerning the expenses and debt related to 2113 Valentine Court, New Orleans, Louisiana. That property was purchased by Ms. Bourdais on May 2, 2001. Shortly before their July 3, 2003 marriage, Ms. Bourdais refinanced the home. After their marriage, the property became the marital domicile until their divorce in 2013. On August 30, 2007, Ms. Bourdais donated one half of her interest in the property to Mr. Volpe. The mortgage on the property remained in Ms. Bourdais' name.
It is well settled that when partitioning community property, the trial court may divide particular assets or liabilities equally or unequally, taking into consideration the nature and source of the asset or liability, the economic condition of the spouses, and any other relevant circumstances.[2] However, the trial court is mandated to divide the community assets and liabilities so that each spouse receives property of an equal net value.[3]
The first reimbursements challenged by Ms. Bourdais are for half of the community funds used, prior to the August 30, 2007 donation, to pay for the flood *874 insurance,[4] homeowner's insurance,[5] and taxes[6] on the property. Generally, when the community has benefited from the use of a home as a marital residence, as is the case here, expenses such as insurance and taxes are not considered reimbursable expenses.[7] For that reason, we find the trial court abused its discretion in awarding Mr. Volpe reimbursement for those expenses.
Additionally, the trial court awarded Mr. Volpe half of the community funds used towards the payment of the principal on the property,[8] from the date of marriage to termination of the community,[9] and also awarded him half of the community funds used to satisfy the mortgage on the property at the act of sale.[10]
Here, one of the largest assets of the community was the equity in the Valentine Court property. The property was the matrimonial domicile for the entirety of the marriage. Prior to the donation, the property was Ms. Bourdais' separate property. At the time of the donation, Mr. Volpe was aware that the property had a mortgage attached to it and he acknowledged as much in the donation document. That mortgage remained in Ms. Bourdais' name. Even though, Mr. Volpe benefitted from the use of the property and shared in its equity, he also sought reimbursements for payments to the principle during the course of the marriage and half of the funds used to satisfy the mortgage at the act of sale.
Similarly, in Maxwell v. Maxwell , Mr. Maxwell owned immovable separate property at the time of his marriage to Mrs. Maxwell.[11] During the course of the marriage, Mr. Maxwell donated fifty percent interest in the immovable property to Mrs. Maxwell. The donation document stated that "[t]he property donated herein shall be subject to any debt on any outstanding mortgages or liens."[12] After their divorce, Mr. Maxwell argued that the mortgage, which remained in his name, was a community obligation.[13] The court rejected the reclassification of the debt from separate to community.[14] However, the court did find that Mrs. Maxwell, as donee, gained the property subject to the mortgage.[15] Likewise, in this case, Mr. Volpe shares equally in the equity of the property subject to its mortgage.
After satisfying the outstanding debt on the property, Mr. Volpe and Ms. Bourdais shared equally in approximately $ 69,000.00 of equity that had accumulated from the ownership of the property. Reviewing the trial court's reimbursements pertaining to the property, in light of the principles of partitioning a community, it is unjust, inequitable and improper for Mr. Volpe to also be reimbursed for half of the payments to the principle on the mortgage during the marriage, and for one half of the funds used to settle the mortgage at *875 the act of sale.[16] Accordingly, we find the trial court abused its discretion in the award of those reimbursements.
Ms. Bourdais also seeks reimbursement for half of the mortgage payments made from May 1, 2013 until March 24, 2017. The community had terminated by May 2013, and during this time she had exclusive use and occupancy of the home. Former spouses continue to be co-owners of the former community property even after the termination of the community and until it has been finally partitioned.[17] Although the statute for co-ownership allows for the reimbursement of "incurred necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to a third person,"[18] the jurisprudence has found that mortgage payments do not fall within those categories.[19] For that reason, we do not find that the trial court abused its discretion in denying this reimbursement to Ms. Bourdais.
Lastly, both parties agree the trial court erred in its calculation for the rental reimbursement due Mr. Volpe. Accordingly, the judgment is amended to reflect that Mr. Volpe is awarded rental reimbursement in the amount of $ 12,350.00.
Student Loan Debt
Ms. Bourdais also contends that the trial court erred in the amount that was awarded her as reimbursement for Mr. Volpe's student loans, his separate debt. According to the testimony at trial, Mr. Volpe's student loans and interest paid off during the marriage totaled $ 20,800.99. Also established at trial was that Mr. Volpe used $ 8,512.00 of his separate funds to pay off part of the student loans.[20] In the trial court's judgment, the amount of reimbursement awarded Ms. Bourdais was $ 4,844.00. Relying on the numbers established at trial we find that the proper reimbursement would be one half of $ 12,288.99 ($ 20,800.99-$ 8,512.00), or $ 6,144.50. The judgment is amended to reflect the increase in that reimbursement.
2012 Taxes
In this final assignment of error Ms. Bourdais argues that the trial court erroneously denied awarding her half of the liabilities associated with the 2012 taxes as ordered by the March 19, 2013 Consent Judgment. That judgment ordered Mr. Volpe and Ms. Bourdais to file their 2012 taxes jointly and share equally in all refund(s) and liabilities.
At trial Ms. Bourdais presented testimony and documentation that indicated she paid for the preparation of the 2012 taxes, the taxes owed to the federal government, and the late fee associated with those taxes.[21] Fifty percent of those expenses, less the refund from the state taxes, totaled $ 1,465.21. The trial court erroneously *876 failed to address the 2012 tax reimbursement in its judgment. Accordingly, the judgment is amended to reflect a tax reimbursement to Ms. Bourdais in the amount of $ 1,465.21.
Conclusion
The trial court's judgment is reversed as to Mr. Volpe's reimbursements for flood insurance ($ 124.50), homeowner's insurance ($ 1,668.12), and property taxes ($ 595.53). The reimbursements to Mr. Volpe for reduction to the principal balance of the first mortgage ($ 8,465.77) and for the funds used to satisfy the first mortgage ($ 34,824.83) are also reversed. Further, the judgment is amended to reflect that Mr. Volpe's rental reimbursement is $ 12,350.00, to increase Ms. Bourdais' reimbursement for Mr. Volpe's student loan debt to $ 6,144.50, and to include Ms. Bourdais' reimbursement for the 2012 taxes in the amount of $ 1,465.21. In all other respects the judgment is affirmed.
REVERSED IN PART; AMENDED IN PART; AND AFFIRMED IN PART

Legaux-Barrow v.Barrow , 08-530, p. 5 (La.App. 5 Cir. 1/27/09), 8 So.3d 87, 90 (citing Kambur v. Kambur , 94-775 (La.App 5 Cir. 3/1/95), 652 So.2d 99 ).

La.R.S. 9:2801(4)(c).

La.R.S. 9:2801(4)(b).

$ 124.50.

$ 1,668.12.

$ 595.53.

Dillenkoffer v. Dillenkoffer , 492 So.2d 71, 75 (La.App. 5 Cir. 1986).

$ 8,465.77.

July 3, 2004 until October 11, 2012.

$ 34,824.83.

51,335, p.2 (La.App. 2 Cir. 4/5/17), 217 So.3d 1227, 1229.

Id. at p. 3, 217 So.3d at 1230.

Id. at p. 6, 217 So.3d at 1231.

Id. at p. 7, 217 So.3d at 1232.

Id.

These reimbursements resulted in Mr. Volpe's net share of the community being $ 74,307.93, while Ms. Bourdais' net share of the community was $ 2,083.11.

La. C.C. arts. 2369, 2369.1 ; Gill v. Gill , 39,406, p.5 (La. App. 2 Cir. 3/9/05), 895 So.2d 807, 812.

La. C.C. art. 806.

Cahill v. Kerins , 34,522, p. 8 (La.App. 2 Cir. 4/4/01), 784 So.2d 685, 691. (A mortgage payment is not an expense within the meaning of Article 806, but is a non-possessory right created over property to secure the performance of an obligation.); see also, Roque v. Tate, 631 So.2d 1385, 1386 (La.App. 5 Cir. 1994).

Those funds were received by Mr. Volpe as a gift from his grandfather.

Tax preparation $ 240.00, federal taxes $ 3,984.00, and late payment penalty $ 179.63.